IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HECTOR V., Jr.[1] | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARTIN O'MALLEY, | : | NO.  22-4242 |
| Commissioner of Social Security[2] | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                            April  30, 2024

Hector V., Jr., ("Plaintiff") seeks review of the Commissioner's decision denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").  For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and affirm the Commissioner's decision.

I.    **PROCEDURAL HISTORY**

On August 18, 2020, Plaintiff protectively filed applications for DIB and SSI, alleging that he became disabled on January 13, 2020, as a result of autism, a learning disability, depression, anxiety, asthma, cardiac arrest in 2017, and left knee pain.  Tr. at

---

[1]To protect the privacy interests of plaintiffs in social security cases, I have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that judicial opinions should refer to plaintiffs in such cases by their first name and last initial.

[2]Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner O'Malley should be substituted for Kilolo Kijakazi as the defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

119, 120, 247, 255, 271.  The applications were denied initially on December 28, 2020,

id. at 172, 176, and on reconsideration on March 10, 2021.  Id. at 183, 193.  Plaintiff

requested an administrative hearing, id. at 203, which took place on June 29, 2021.  Id. at

33-76.  On August 30, 2021, the ALJ found Plaintiff was not disabled.  Id. at 16-28.  On

August 25, 2022, the Appeals Council denied Plaintiff's request for review, id. at 1-4,

making the ALJ's August 30, 2021 decision the final decision of the Commissioner.  20

C.F.R. §§ 404.981, 416.1481.  Plaintiff commenced this action in federal court on

October 23, 2022, Doc. 1, and the matter is now fully briefed and ripe for review.  Docs.

9, 11.[3]

## II.   <u>LEGAL STANDARDS</u>

To prove disability, a claimant must demonstrate an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for . . . not less than twelve

months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process,

evaluating:

> 1.     Whether the claimant is currently engaged in
> substantial gainful activity;
>
> 2.     If not, whether the claimant has a "severe
> impairment" that significantly limits his physical or mental
> ability to perform basic work activities;
>
> 3.     If so, whether based on the medical evidence,
> the impairment meets or equals the criteria of an impairment

---

[3]The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C.
§ 636(c).  <u>See</u> Standing Order, In RE:  Direct Assignment of Social Security Appeals to
Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Doc. 6.

listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform his past work; and

5.      If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R.

§§ 404.1520(a)(4), 416.920(a)(4).  Plaintiff bears the burden of proof at steps one through

four, while the burden shifts to the Commissioner at the fifth step to establish that the

claimant is capable of performing other jobs in the local and national economies, in light

of his age, education, work experience, and RFC.  See Poulos v. Comm'r of Soc. Sec.,

474 F.3d 88, 92 (3d Cir. 2007).

The court's role on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence.  42 U.S.C. § 405(g); Schaudeck v. Comm'r

of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is

whether there is substantial evidence to support the Commissioner's conclusion that

Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion," and must be "more than a mere

scintilla."  Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552

(3d Cir. 2005)); see also Biestek v. Berryhill, 587 U.S. __, 139 S. Ct. 1148, 1154 (2019)

(substantial evidence "means only – 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court has plenary review of legal issues. Schaudeck, 181 F.3d at 431.

### III.   **DISCUSSION**

#### A.   **ALJ's Findings and Plaintiff's Claims**

The ALJ found that Plaintiff had the severe impairments of generalized anxiety disorder ("GAD"), autism spectrum disorder ("ASD") with accompanying intellectual impairments, a left knee disorder, and anxiety. Tr. at 19. The ALJ also found that Plaintiff's major depressive disorder ("MDD"), hypertension, asthma, and obesity were non-severe, as the record did not support any work-related limitations from these conditions. Id. The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the Listings, id., and that he had the RFC to perform medium work (lift and carry 50 pounds occasionally and 25 pounds frequently), and that he could sit for 8 hours and stand or walk for 8 hours in a workday; occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, or crawl; and avoid concentrated exposure to extreme cold, heat, humidity, fumes, odors, dusts, gases or poor ventilation. Id. at 21. In addition, the ALJ found that Plaintiff was limited to the performance of simple, routine tasks and simple work related decisions; was able to understand, remember, and carry out simple instructions and make simple work-related decisions; could tolerate a low level of work pressure, defined as work not requiring multitasking, detailed job tasks, significant independent judgment, very short deadlines, or teamwork in completing job tasks; could work at a consistent

pace throughout the workday, but not at a production rate pace where each task must be completed within a strict time deadline; could sustain an ordinary routine without special supervision and tolerate occasional changes in the work setting; and could tolerate occasional interaction with coworkers, supervisors, and the public, however was able to participate and cooperate with supervisors and coworkers during the training period for unskilled work.  Id.

Based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could not perform his past relevant work as a stores laborer and commercial cleaner, but could perform the jobs of floor waxer, copy machine operator, and silver wrapper.  Tr. at 27-28.  Therefore, the ALJ found that Plaintiff was not disabled.  Id. at 28.

Plaintiff claims the ALJ failed to (1) properly consider the limitations imposed by the impairments that the ALJ found to be severe, and (2) properly weigh the opinion evidence with respect to Plaintiff's mental limitations.  Doc. 9 at 9-18.  Defendant responds that the ALJ properly considered the evidence, employing the appropriate regulations, and her decision is supported by substantial evidence.  Doc. 11 at 7-17.

**B.     Plaintiff's Claimed Limitations and Testimony at the Hearing**

Plaintiff was born on May 4, 1971, and thus was 48 years old at his disability onset date (January 13, 2020), and 50 years old at the time of the ALJ's decision (August 30, 2021).  Tr. at 119, 120, 247.  Plaintiff completed high school in special education classes and later took computer classes at a business and technical school.  Id. at 43-44, 50-51, 272.  He has past relevant work as a stores laborer for Wal-Mart and Lowes, and as a commercial cleaner.  Id. at 69, 273.  Plaintiff worked as a produce stocker at Wal-

Mart for 17 years and left that job because he was not being treated well and he started working in maintenance and housekeeping.  Id. at  45-46, 56.  After that job, he became a seasonal loader and unloader of trucks for Lowe's, but was laid off due to poor work quality.  Id. at 49, 58.  When asked why he can't work, Plaintiff said it was due to his work quality and because he is asthmatic.  Id. at 53-54.  Plaintiff testified that when he walks for about 45 minutes his knee hurts "a little bit."  Id. at 55.

Plaintiff's sister, with whom he lives, also testified.  She explained that she needs to remind Plaintiff to take medications or call for refills, and that he needs reminders about chores.  Tr. at 63-64.  She accompanies him to the grocery store because he chooses the wrong items or misinterprets what she requested.  Id. at 65.  She also noted that he has left the stove on after using it, resulting in burned pans.  Id. at 64.  He did not understand the paperwork related to his social security claim and she helped him fill out the paperwork.  Id. at 64-65.  She also testified that Plaintiff has trouble interacting with people, such as cashiers at the store or his doctor, because "he always lacks social skills." Id. at 66.

At the hearing, a VE classified Plaintiff's jobs as a store's laborer and the cleaning/maintenance job as unskilled, heavy work.  Tr. at 69.  The cleaning/maintenance job was unskilled, heavy work.  Id.  Based on the hypothetical posed by the ALJ, which is identical to the ALJ's RFC assessment, see supra at 4-5 (describing RFC), the VE testified that such an individual would not be able to perform Plaintiff's past relevant work, but could perform work as a floor waxer, photocopier operator, and silver wrapper. Id. at 71-72.  When asked by Plaintiff's counsel, the VE testified that a marked

impairment in the ability to make simple work-related decisions "would preclude even the simple routine repetitive work."  Id. at 74.

### C.      Summary of the Medical Record

Beginning with Plaintiff's physical conditions, he has a history of asthma.  Tr. at 403.  On November 24, 2020, at the consultative internal medicine exam, Plaintiff reported to David B. Klebanoff, M.D., that his last asthma attack was in 2017, concurrent with a heart attack for which he was hospitalized for three days.  Id. at 356.  His primary care group prescribed inhalers of albuterol and fluticasone, and montelukast tablets.[4]  Id. at 409.  On October 20, 2020, Plaintiff's primary care physician, Dominic Derenge, D.O., added Symbicort to his regimen.[5]  Id. at 453.  Plaintiff suffered a left knee injury in 2011, and he reported to Dr. Klebanoff that the knee is occasionally painful and that he takes no pain medication for it.  Id. at 356.  An x-ray done on January 10, 2020, showed mild arthritis.  Id. at 444.

---

[4]Albuterol is a bronchodilator used to treat or prevent bronchospasm or narrowing of the airways in the lungs in people with asthma.  See https://www.drugs.com/albuterol.html (last visited Apr. 16, 2024).  Fluticasone is a steroid used to prevent asthma attacks.  See https://www.drugs.com/mtm/fluticasone-inhalation.html (last visited Apr. 16, 2024).  Montelukast helps reduce inflammation and is used to prevent asthma attacks.  See https://www.drugs.com/search.php?searchterm=montelukast (last visited Apr. 16, 2024).

[5]Symbicort contains budesonide, a corticosteroid that reduces inflammation, and formoterol, a long-acting bronchodilator, that relaxes muscles in the airways to improve breathing, and is used to control and prevent the symptoms of asthma.  See https://www.drugs.com/symbicort.html (last visited Apr. 16, 2024).

The administrative record contains treatment notes from Esperanza Health Center, indicating treatment for hypertension for which Plaintiff takes lisinopril,[6] adjustment disorder with depressed mood, ASD, snoring symptoms, asthma, and obesity.  Tr. at 403-04.  In his November 24, 2020 exam, the only limitation Dr. Klebanoff noted was that Plaintiff was limited in his ability to squat at 70% due to left knee discomfort.  Id. at 358.

On December 27, 2020, at the initial consideration stage, Nisha Singh, M.D., concluded from her review of the record that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk for 6 hours, and sit for 6 hours in a workday.  Tr. at 86-87, 108.[7]

Plaintiff's claims focus on his mental conditions.  On March 28, 2019, Griszel Long, LCSW, of Esperanza's Behavioral Health Department, noted a diagnosis of adjustment disorder with depressed mood.[8]  Tr. at 407.  Prior to his alleged disability onset date, Plaintiff's increased stress seemed to arise from his separation from his wife and her interference with his relationship with their children.  See id. at 418 (Plaintiff "experiencing depression and heightened stress secondary to his conflictual relationship

---

[6]Lisinopril is used to treat high blood pressure.  See https://www.drugs.com/lisinopril.html (last visited Apr. 16, 2024).

[7]Ruth Myers Arnold, D.O., found the same exertional limitations based on her review of the record on reconsideration on March 9, 2021.  Tr. at 132, 155.  Dr. Myers found additional environmental limitations, adding exposure limitations to extreme heat, cold, and humidity, id. at 134, 157, to Dr. Singh's exposure limitation to fumes, odors, dusts, gases, and poor ventilation.  Id. at 89, 110.

[8]Based on the treatment note, it is clear that this was not Plaintiff's initial visit to the Behavioral Health Unit.  Clinician Long was familiar with Plaintiff's relational stress arising from the separation from his wife.  Tr. at 407

with ex and the violations of his custody arrangement").  In December 2019 Dr. Derenge

started Plaintiff on Lexapro,[9] id. at 433-34, and on June 4, 2020, the doctor noted that

Plaintiff was doing well with the addition of Lexapro.  Id. at 448.

Plaintiff began treatment at The Place for Refuge on January 27, 2020.  Tr. at 386.

He was originally diagnosed with GAD, id. at 397, and his mental status exam was

notable for slow speech, poor insight, and impaired judgment.  Id. at 394-95.  Yin Hu,

M.A., Plaintiff's therapist, noted that Plaintiff could not find stable employment, was

facing a court hearing for failing to pay child support, and wanted to apply for disability,

but the clinician believed Plaintiff "lack[ed] the verbal and intellectual ability to

understand and navigate through the court hearings."  Id. at 397.

Ms. Hu referred Plaintiff to the University of Pennsylvania Assessment Clinic for

assessment of his poor communication and social skills and to address the question

whether he suffers from ASD.  Tr. at 333.  In March 2020, Simone H. Schriger, M.A.,

administered a series of tests, including the Wechsler Adult Intelligence Scale-IV

("WAIS-IV"), which revealed,

> [Plaintiff] had a significant weakness in verbal language,
> verbal comprehension and arithmetic, although his working
> memory for auditory stimuli was intact.  He typically
> performed in the Extremely Low or Borderline ranges on
> those tests.  He also struggled with two non-verbal tests, one
> of which involved mathematical reasoning, and the other of
> which involved mental rotation, performing in the Borderline
> range on both.  On the other hand, his performance on Matrix
> Reasoning was in the Superior range, reflecting a highly
> unusual peak ability that is well over three standard

---

[9]Lexapro is an antidepressant.  See https://www.drugs.com/lexapro.html (last
visited Apr. 16, 2024).

deviations above his weakest abilities.  Such a pattern is not
uncommon in ASD.

Id. at 343.  Based on the results of the assessments, Ms. Schriger and Melissa Hunt Ph.D.,

diagnosed Plaintiff with ASD with accompanying intellectual impairment, and MDD,

recurrent, moderate, in full remission.  Id. at 350.

On August 17, 2020, therapist Hu added GAD to the diagnoses just referenced.

Tr. at 399.  Ms. Hu noted that Plaintiff's "mood has stabilized with less worries and

obsession with looking for a job after receiving ASD [diagnosis] and given knowledge of

resources that are available to him."  Id.  Plaintiff was noted as having "poor problem-

solving skills."  Id.  The record also contains a letter from Ms. Hu to the Court of

Common Pleas of Lebanon County recommending that Plaintiff be considered for social

services and financial assistance "available to persons with disability," stating that

"[Plaintiff] shows classic symptoms of ASD including avoidance of eye contact, deficit

in language comprehension, learning disability, inappropriate social interactions, and lack

of understanding social cues."  Id. at 465.

Elisabeth N. Gibbings, Psy. D., conducted a consultative mental status evaluation

on November 24, 2020, noting that Plaintiff was cooperative and responsive to all

questions.  Tr. at 374.  Dr. Gibbings found that Plaintiff's eye contact was intermittent to

poor, language skills were limited in some areas, thought process was tangential, Plaintiff

had restricted affect and stressed mood, attention and concentration were intact, recent

memory was intact, but remote memory was impaired, insight poor, and judgment fair.

Id. at 374-75.  The doctor diagnosed ASD and unspecified anxiety disorder, and noted

that Plaintiff would not be able to manage his own funds based on his stated inability to do so.  Id. at 375.  The doctor found that Plaintiff had no limitation in the abilities to understand, remember, or carry out simple work instructions, make judgments on simple work-related decisions, or understand and remember complex instructions; mild limitation on the ability to make judgments on complex work-related decisions and interact with supervisors; and moderate limitations in the abilities to carry out complex instructions, interact with coworkers and the public, and respond appropriately to usual work situations and changes in a routine work setting.  Id. at 377-78.

On December 3, 2020, at the initial consideration level, John Paul Rohar, Ph.D., found from his review of the evidence that Plaintiff had mild limitations in the ability to understand, remember or apply information, and moderate limitations in his abilities to interact with others, concentrate, persist, or maintain pace, and adapt or maintain oneself. Tr. at 105.  Specifically, and relevant to Plaintiff's claims, the doctor found Plaintiff was not significantly limited in the abilities to carry out very short and simple instructions, perform activities within a schedule, sustain an ordinary routine, make simple work-related decisions, ask simple questions or request assistance, accept instructions and respond to criticism, maintain socially appropriate behavior, be aware of normal hazards, travel in unfamiliar places or use public transportation, and set realistic goals and make plans independently of others.  Id. at 111-13.  The doctor found Plaintiff was moderately limited in the abilities to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination or in proximity to others, perform at a consistent pace without an unreasonable number and length of rest periods,

interact with the public, get along with coworkers without distracting them, and respond to changes in the work setting.  Id. at 111-14.

On February 25, 2021, at the reconsideration stage, Francis Matthew Murphy, Ph.D., found from his review of the evidence that Plaintiff had moderate limitations in the four of the areas of mental functioning – understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. Tr. at 152.  Dr. Murphy also found that Plaintiff was not significantly limited in his ability to understand, remember, or carry out very short and simple instructions, and moderately limited in his ability to understand, remember, and carry out detailed instructions, maintain attention for extended periods, work in coordination with or proximity to others, interact with the public, and get along with coworkers.  Id. at 158-61.

On June 21, 2021, Ms. Hu completed a Mental Residual Functional Capacity Assessment.  Tr. at 466-70.[10]  The report concluded that Plaintiff had no limitations in the abilities to follow one-or-two step oral instructions and maintain personal hygiene; mild limitation in the abilities to maintain socially appropriate behavior, sustain an ordinary routine and regular attendance, work a full day without needing more than the allotted number of rest breaks, respond to demands, and manage psychologically based

---

[10]The assessment had a 5-point scale (or not ratable) to rate the patient's ability to function independently, appropriately, effectively and on a sustained basis:  "None" meant no limitations; "Mild" meant slightly limited and the patient would be off task 5% of the workday; "Moderate" meant the patient had a fair ability and would be off task 10% of the workday; "Marked" meant the ability was seriously limited and the patient would be off task 15% of the workday; "Extreme" meant the patient is not able to function in the area and would be off task 25% or more of the workday.  Tr. at 467.

symptoms; moderate limitation in the abilities to cooperate with others, and initiate and perform a task he understands and knows how to do; marked limitation in the abilities to understand and learn work-like terms, instructions, and procedures, ask for help when needed, keep social interactions free from excessive irritability, sensitivity, argumentativeness, or suspiciousness, interact appropriately with the general public, and adapt to changes; and extreme limitation in the abilities to describe work activity to others, ask and answer questions and provide explanations, recognize a mistake and correct it, identify and solve problems, ability to sequence/complete multi-step activities, use reason and judgment to make work-related decisions, handle conflicts, state his own point of view, initiate or sustain a conversation, understand and respond to social cues, and respond appropriately to requests, suggestions, or criticism. Id. at 467-70. Ms. Hu opined that Plaintiff's impairment would interfere with his ability to work at least 20% of the time and that he could not work because his abilities to "understand instructions, learn new skills, and make judgments are markedly limited due to ASD." Id. at 470.

**D.    Plaintiff's Claims**[11]

        1.    Mental Health Opinion Evidence

Plaintiff claims that the ALJ erred by failing to give sufficient weight to the opinions of Plaintiff's therapist, Yin Hu,[12] the psychological assessment from the University of Pennsylvania, and the findings of consultative mental health examiner Dr.

---

[11]I reversed Plaintiff's claims for ease of discussion.

[12]Plaintiff identifies this treatment provider as Yin Hua. Doc. 9 at 14-16.

Gibbings.  Doc. 9 at 14-18.  Defendant responds that Plaintiff relies on an outdated

regulation pertaining to the weight of medical opinions, and argues that the ALJ properly

considered the evidence under the applicable regulation and her decision is supported by

substantial evidence.  Doc. 11 at 14-17.

Before addressing Plaintiff's challenge to the ALJ's consideration of the mental

health opinion evidence, I must first address the regulatory scheme governing such

consideration.  In his brief, Plaintiff begins by referring to the "weight" given to certain

mental health opinion evidence and suggesting that treating physicians' opinions are

entitled to controlling weight, citing a previously applicable regulation.  Doc. 9 at 14-15.

The social security regulations were revised in 2017 to abandon the concept of

evidentiary weight and focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight,
> including controlling weight, to any medical opinion(s) or
> prior administrative medical finding(s), including those from
> your medical sources.

20 C.F.R. §§ 404.1520c(a), 416.920c(a).[13]  These regulations list the factors to be utilized

in considering medical opinions:  supportability, consistency, relationship including the

length and purpose of the treatment relationship and frequency of examinations,

specialization, and other factors including familiarity with other evidence in the record or

an understanding of the disability program.  Id. §§ 404.1520c(c), 416.920c(c).  The most

important of these factors are supportability and consistency, and the regulations require

---

[13]The new regulations apply to cases filed on or after March 27, 2017, 20 C.F.R.
§§ 404.1520c, 416.920c, which includes Plaintiff's application filed on August 18, 2020.

the ALJ to explain these factors, but does not require discussion of the others.  Id.

§§ 404.1520c(b)(2), 416.920c(b)(2).  The regulations explain that "[t]he more relevant

the objective medical evidence and supporting explanations presented by a medical

source are to support his or her medical opinion(s) . . . , the more persuasive the medical

opinions . . . will be."  Id. §§ 404.1520c(c)(1), 416.920c(c)(1).  In addition, "[t]he more

consistent a medical opinion(s) . . .  is with the evidence from other medical sources and

nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be."  Id.

§§ 404.1520c(c)(2), 416.920c(c)(2).

Here, Plaintiff generally argues that the ALJ did not afford Ms. Hu's opinions

sufficient weight, arguing that the therapist's findings of marked limitation, expected

absenteeism, and being off task more than 20% of the time were consistent with the

findings of Ms. Schriger/Dr. Hunt in the psychological assessment, and Dr. Gibbings'

examination findings.  The ALJ found therapist Hu's opinions not persuasive:

> The opinion of Yin Hu, MA [tr. at 466-70], is not persuasive.
> The opinion expressed extreme limitations in ability to
> understand, remember or apply information and interact with
> others; moderate limitations in concentrating, persisting, and
> maintaining pace; ability to understand instructions, learn
> new skills and make judgment are markedly limited due to
> autism.  The opinion is inconsistent with [Plaintiff's] work
> history and activities of daily living.  [Plaintiff] worked
> successfully in the past and only stopped working when
> COVID-19 hit.  Nothing in the medical evidence of record
> suggests that [Plaintiff's] condition has worsened since he
> stopped working.

Tr. at 25.  The ALJ found therapist Hu's letter to the Court of Common Pleas

unpersuasive for similar reasons.

> The statement of Yin Hu, MA [tr. at 465], was considered and
> found to be not persuasive.  Yin Hu indicated that [Plaintiff]
> had a history of experiencing abuse and mistreatment by
> employers due to his disability.  He also experienced job
> discrimination "which severely limited his ability to find
> work".  It was further recommended that [Plaintiff] be
> considered for social services and financial assistance
> available to persons with disability.  This opinion conflicts
> with [Plaintiff's] own excellent work history up until
> COVID-19 as well as [Plaintiff's] ability to perform a number
> of independent activities of daily living.

Id. at 25-26.

The ALJ's conclusion is supported by substantial evidence.  In the letter to the

Court of Common Pleas, tr. at 465, Ms. Hu recommends a finding of disability, but that is

a determination reserved for the Commissioner.  See 20 C.F.R. §§ 404.1520b(c)(3)(i),

416.920b(c)(3)(i) (determination of disability reserved to the Commissioner).  As such,

the statement "is inherently neither valuable nor persuasive."  Id. §§ 404.1520b(c);

416.920b(c).  With respect to the RFC assessment, as previously discussed, therapist Hu

found Plaintiff suffered from several marked and extreme limitations in his abilities to

understand, remember or apply information, interact with others, and adapt or manage

himself, and opined that he would miss 2 days per month and that his mental impairment

would interfere with his ability to work at least 20% of the time.  Tr. at 467-70.  These

findings are inconsistent with Plaintiff's significant work history, including working in

the produce department of Walmart for 17 years with no documented intervening mental

health symptom exacerbation.

The marked and extreme limitations noted by therapist Hu are also inconsistent

with consultative examiner Dr. Gibbings' findings that Plaintiff had no limitation in his

abilities to understand and remember simple and complex instructions and carry out simple instructions; mild limitation in the ability to make judgments on complex work-related instructions; and moderate limitation on the ability to carry out complex instructions.  Tr. at 377.   Likewise, Dr. Gibbings' findings of mild and moderate limitations in the abilities to interact with others stands in sharp contrast to therapist Hu's primarily marked and extreme limitations in the same area.  Compare id. at 378 (Dr. Gibbings' assessment) with id. at 468 (Ms. Hu's assessment).[14]

Plaintiff also complains that the ALJ did not give proper weight to the assessment prepared by Ms. Schriger and Dr. Hunt.  Doc. 9 at 16.  Specifically, Plaintiff argues that testing results and notations strongly indicate that Plaintiff is unable to work.  Id. at 16-17.  Defendant responds that the ALJ considered the evaluation and its recommendation that Plaintiff seek employment similar to his prior work.  Doc. 11 at 16.

The ALJ discussed both the assessment and the opinion offered that Plaintiff could return to work similar to his prior employment.

---

[14]To the extent Plaintiff complains that the ALJ failed to note specific references in Dr. Gibbings' report indicating limited expressive language skills, restricted affect, feeling stressed during the exam, below average intellectual functioning, poor insight, fair judgment, and an inability to manage his own funds, Doc. 9 at 17, I reject the argument. Despite these observations, Dr. Gibbings found that Plaintiff had no limitations in the abilities to understand, remember, and carry out simple instructions or understand and remember complex instructions; moderate limitation in the abilities to carry out complex instructions, interact with the public and co-workers and respond to changes in a routine work setting; and mild limitation in the abilities to make judgments on complex work-related decisions, and interact with supervisors.  Tr. at 377.  Moreover, the ALJ's findings and RFC assessment are more restrictive than Dr. Gibbings' Medical Source Statement in that the ALJ found that Plaintiff had moderate limitation in understanding, remembering, or applying information, and was limited to the performance of simple, routine tasks and simple work-related decisions.  Id. at 20, 21.

> [Plaintiff] underwent a diagnostic interview in March of 2020
> with findings consistent with an ability to perform simple
> unskilled work.  According to the results of the interview,
> [Plaintiff] met the criteria for [MDD] I in full remission.  To
> evaluate [Plaintiff's] neuropsychological functioning; the
> WAIS IQ test was administered.  Due to COVID, his Full
> Scale IQ was unable to be calculated, but other index scores
> were measured.  He did not seem to have difficulty with
> understanding directions.  He had significant weakness in
> verbal language, verbal comprehension and arithmetic.  His
> performance on Matrix Reasoning was in the superior range,
> reflecting a highly unusual peak ability that was well over
> three standard deviations above his weakness [sic] abilities,
> which was noted to be uncommon in [ASD].  He was
> diagnosed with [ASD] with accompanying intellectual
> impairment and [MDD] in full remission ([tr. at 333-55]).

Id. at 24.[15]  The ALJ concluded that the report was consistent with Plaintiff's ability to

perform work:

> The opinion of [Plaintiff's] provider, Dr. Melissa
> Hunt/Simone Schriger, MA, recommending that [Plaintiff]
> pursue employment similar to the job that he has successfully
> held at Walmart for so many years, is given partial weight.
> [Plaintiff] was found to be unable to perform his past work as
> a stores laborer due to limited ability to perform certain
> postural maneuvers.  Though [Plaintiff] could not go back to
> this type of work in particular due to the physical demands,
> the records support that [Plaintiff] was capable of performing
> other jobs.  The undersigned agrees that [Plaintiff] would not
> be limited from working.

Tr. at 25.

---

[15]The ALJ misquoted the findings regarding Plaintiff's Matrix Reasoning.  The
Assessment states that "his performance on Matrix Reasoning was in the Superior range,
reflecting a highly unusual peak ability that is well over three standard deviations above
his weakest abilities.  Such a pattern is not uncommon in ASD."  Tr. at 343.

It is clear in reviewing the assessment that the ALJ considered the following weaknesses and strengths summarized by Ms. Schriger and Dr. Hunt.

> Despite the challenges that [Plaintiff] has faced and the deficits in certain communication, social, and adaptive skills discussed in this report, he also has a number of marked strengths. This was evident during the administration of the WAIS. Although he has difficulty with abstract concepts, [Plaintiff] did not appear to have any difficulty with understanding the instructions of the test. It is likely that when concepts are broken down into simplified steps and repeated, [Plaintiff] will be well-suited to grasp them. . . . In particular, we recommend that [Plaintiff] pursue employment similar to the job he successfully held at Walmart for so many years. While it may be difficult to find work in the current economic shutdown, independent employment will help him feel more connected and less lonely, and will provide him with income to address some of his financial difficulties.

Tr. at 354. The ALJ's RFC assessment -- limiting Plaintiff to the performance of simple, routine tasks and simple work-related decisions, with an ability to understand, remember, and carry out simple instructions and make simple work-related decisions, an ability to tolerate occasional interaction with coworkers, supervisors, and the public, and a limitation that he not work at a production rate pace -- incorporates the strengths and weaknesses identified in the psychological assessment and is consistent with its conclusion that Plaintiff should find work similar to that performed at Walmart. Thus, I find no error in the ALJ's consideration of the opinion evidence.

2.     Failure to Include All Limitations Related to Severe Impairments

Plaintiff also complains that the ALJ failed to properly consider limitations imposed by Plaintiff's GAD, ASD with intellectual impairment, and left knee

impairment.[16]  Doc. 9 at 9-13.  Specifically, Plaintiff complains that the ALJ failed to consider his limitations in the ability to remain on task, need for additional unscheduled breaks, issues with attendance, and need for specialized instruction and supervision.  Id. at 10.  Defendant responds that the ALJ appropriately accounted for Plaintiff's record-supported mental limitations in the RFC assessment.  Doc. 11 at 8-13.

RFC is defined as "the most [an individual] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).  In assessing a claimant's RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, including those that are not severe.  Id. §§ 404.1545(a)(2), 416.954(a)(2).  However, the ALJ is not required to include every impairment a claimant alleges.  Rutherford, 399 F.3d at 554.  Rather, the RFC "must 'accurately portray' the claimant's impairment," meaning "those that are medically established," which "in turn means . . . a claimant's *credibly established limitations*."  Id. (emphasis in original) (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984), and citing Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002)); Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999).  The ALJ must include all credibly established limitations in the RFC and in the hypothetical posed to the VE. Ramierez v. Barnhart, 372 F.3d 546, 550 (3d Cir. 2004) (citing Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)).

---

[16]In the caption of this claim, Plaintiff includes a left knee disorder in the impairments for which the ALJ did not properly include functional limitations.  Doc. 9 at 9.  However, the argument focuses on non-exertional limitations unrelated to Plaintiff's left knee disorder.  Id. at 9-13.  Moreover, Plaintiff testified when he walks for about 45 minutes, his "knee hurt[s] a little bit," and that he did not take any medication for the pain.  Tr. at 54-55.

Many of the limitations noted by Plaintiff come from the opinions previously discussed.  For example, Plaintiff complains that the ALJ did not properly consider his issues with attendance and his need for additional unscheduled breaks and need for specialized instruction.  Doc. 9 at 10.  In therapist Hu's Mental RFC Assessment, she opined that Plaintiff would be absent 2 days per month,was markedly limited in his ability to understand instructions, and would be off task at least 20% of the time.  Tr. at 470.  As previously discussed, the ALJ did not find this opinion persuasive because it was inconsistent with Plaintiff's impressive work history and also inconsistent with the psychological assessment conducted by Ms. Schriger and Dr. Hunt who noted that Plaintiff did not have any difficulty with the instructions for the testing they performed.  Supra at 15-16, 18.  Moreover, consultative examiner Gibbings' findings supported no greater non-exertional limitations than the ALJ included based on her finding that Plaintiff had no limitation in his abilities to understand, remember, and carry out simple instructions.

Plaintiff also complains that the ALJ failed to adequately address notes in the treatment record indicating slow speech, poor insight, impaired judgment, poor communication and intellectual ability, poor problem-solving skills, and trouble responding to questions on examination.  Doc. 9 at 11-12.   Defendant responds that "the ALJ discussed how Plaintiff's longitudinal treatment records supported the restrictive RFC findings, but did not support greater limitations (Tr. 22-25)."  Doc. 11 at 9.

The ALJ adequately explained the non-exertional limitations in the RFC assessment.  The ALJ acknowledged Plaintiff's limitations in communication, verbal

language, verbal comprehension, arithmetic as shown on the psychological testing and limitations in his intellectual functioning, thought processes, insight and general fund of information as shown on MSE.  Tr. at 24.  However, the ALJ noted that Plaintiff reported performing independent activities of daily living, and was able to do laundry, shop, prepare meals, drive, and take public transportation.[17]  Id. at 24, 25.  In addition, the ALJ noted that in spite of these limitations, Plaintiff was able to maintain employment for a significant period of time.  Id. at 25.  These findings are supported by the evidence.  See id. at 44-46 (17 years at Walmart), 55, 63-64 (chores), 290-91 (personal care and meals).  Moreover, Ms. Schriger and Dr. Hunt, who performed the psychological assessment, found that despite his deficits in communication, social, and adaptive skills, Plaintiff had no difficulty with understanding the instructions for the testing they performed and recommended that he pursue employment similar to his produce-stocking position at Walmart.  Id. at 354.[18]

Finally, in this section of his brief, Plaintiff alleges that the ALJ erred in failing to evaluate Plaintiff's developmental disorder using Listing 12.05B.  Doc. 9 at 12-13.  Defendant responds that, although the ALJ did not cite to Listing 12.05B, that Listing has the same criteria as other Listings which the ALJ did address.  Doc. 11 at 12.

---

[17]Plaintiff's sister testified that he does chores around the house, but sometimes needs reminding to complete the job.  Tr. at 64.  She does have concerns because he has left the stove on after using it.  Id.

[18]Because the ALJ limited Plaintiff to medium work, he could not return to that position, which the VE characterized as heavy exertional work.

The B criteria of Listing 12.05 (Intellectual disorder) requires "[s]ignificantly subaverage general intellectual functioning," and "[s]ignificant deficits in adaptive functioning . . . manifested by extreme limitation of one, or marked limitation of two, of the . . . areas of mental functioning [understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintain pace; and adapting or managing oneself]." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05B. The requirement of deficits in adaptive functioning is identical to the B criteria of Listings 12.04, 12.06, and 12.10. Id. §§ 12.04B, 12.06B, 12.10B.

In considering Listings 12.04, 12.06, and 12.10, the ALJ discussed the B criteria and found that Plaintiff had moderate limitation in each of the four areas of mental functioning. Tr. at 19-20. Therefore, the ALJ concluded that Plaintiff did not satisfy the B criteria. Id. at 21. Plaintiff does not take issue with the ALJ's discussion of the criteria with respect to the other applicable Listings, but complains about the ALJ's failure to include 12.05 in the list of applicable Listings. Because the same criteria are applicable, I find no error despite the ALJ's failure to specifically cite Listing 12.05 in her discussion.

## IV.   **CONCLUSION**

The ALJ's opinion is supported by substantial evidence. The ALJ properly considered the opinion evidence with respect to Plaintiff's mental health related limitations and the limitations included in the RFC assessment are supported by substantial evidence.

An appropriate Order follows.